## Galusha *vs.* Cobleigh.

On demurrer to a replication for duplicity, in alleging, as cause for delay, in suing out a writ of error, that the defendant in the original suit was not a resident of the state at the time of service of the writ, but was an inhabitant of another state, and had no notice of the original judgment;—*Held*, that these allegations constitute but one ground of defence, and the plea is not open to objection for duplicity.

A denial of notice of a judgment on which error is brought, is a sufficient denial of notice of a service of the writ on which the judgment is founded.

Where an officer made a return of service of process, by leaving a summons at

the last and usual place of abode of the defendant, and a writ of error was brought, to reverse the judgment recovered in the suit, on the ground that the defendant was not at the time of service an inhabitant of the state, and had no notice of the suit;—*Held*, to be good cause of error, and that such evidence was not precluded by the officer's return, and did not contradict it.

In the statute of limitations, the section fixing the time within which writs of error shall be brought, with the proviso that such limitation shall not affect persons *beyond sea*, the phrase, " beyond sea," is construed to mean persons absent, without the limits of the state.

ERROR, brought to reverse a judgment rendered in the county of Grafton, on the fourth Tuesday of May, 1824, in favor of Cobleigh against the present plaintiff.

The error assigned was, that there was no personal service on the original defendant. The officer returned a nominal attachment of property, and also that he left a summons at Lyman, in the state of New-Hampshire, at the last and usual place of abode of the defendant : whereas the plaintiff in error alleges that he was then, and for a long time before, and until long after the rendition of judgment, an inhabitant of the state of New-York, and had no place of abode elsewhere, nor was within the state of New-Hampshire, nor had any notice of the pendency of the suit during the time aforesaid ; and no other service was made upon him of the writ than as aforesaid, and that there is error for this cause.

The defendant plead the statute of limitations in bar, that the plaintiff's writ of error was not commenced within three years next after the judgment was entered of record.

Replication, that at the time of the rendition of judgment, and until within three years next before the suing out of the writ of error, the plaintiff was not residing within the state of New-Hampshire, but was an inhabitant of, and resided within, the state of New-York, and had no notice whatever of the judgment.

To this replication a demurrer was filed, and the following causes were assigned, viz. :

1. That the replication was double, inasmuch as the plaintiff in error alleged that at the time of the rendition of the

judgment, and until three years next before the suing out of his writ of error he did not reside within the state of New-Hampshire, but during all that time was an inhabitant of, and resided within, the state of New-York ; and also alleged that he had no notice whatever of the judgment rendered.

2. That the replication was a departure from the plaintiff's writ in error, as the writ alleged that the plaintiff had no notice of the original suit, and in the replication the plaintiff does not allege that he had no notice of the suit, but merely that he had no notice of the judgment rendered.

3. The plaintiff does not state that at the time of the rendition of the judgment, and until within three years before the suing out his writ of error, he was " beyond seas."

4. He does not state that during said time he was not within any of the United States.

*Goodall,* for the defendant.   1.  The replication is bad for duplicity, as it alleges that the defendant was an inhabitant of the state of New-York, and that he had no notice of the judgment.   " No single count or plea should state two or more facts, either of which would, of itself, independently of the other, constitute a sufficient ground of action or defence."   1 *Chit. Pl.* 230 ; 3 *Com. Dig., Pleader, B,* 15 ; 5 *Dane's Ab.* 137.

2. The writ alleges that the defendant had no notice of the suit, while the replication alleges that the defendant had no notice of the judgment, which is another issue.   1 *Chit. Pl.* 618.

Farther : the officer returns that he left a summons at the last and usual place of abode of the defendant, which is conclusive evidence of a legal service, and cannot be contradicted, so as to show an erroneous judgment for defect of notice.   The return of an officer is conclusive on all matters material to be returned.   *Com. Dig., Retorn, G ;* 2 *Strange* 813, *Burr* vs. *Satchwell ;* 9 *Mass.* 98, and 11 *Ditto* 165, *Bott* vs. *Burnell ;* 1 *Fairf.* 263, *Stinson* vs. *Snow ;* 8 *Greenl.*

211, *Allen* vs. *Portland Stage Company.* And error con-trary to the record cannot be sustained. 2 *Ld. Ray.* 1414; *Cro. Eliz.* 469, *Wright's Case.*

3. In the New-Hampshire statutes, the term, " beyond seas," is used, in most instances, as synonymous with " with-out the limits of the United States" ; the words used being, " beyond seas, or without any of. the United States ;" or, " beyond seas, without the United States." Such is the case in the statute of limitations as to real actions ; 1 *Laws N. H.* 164; and as to most personal suits ; also in the act relative to the probate of wills, passed in 1814. 1 *Laws N. H.* 170. In the act of 1828, relative to the probate of wills, the words, " beyond sea," are omitted, and the words, " with-out the United States," only are retained. The 7th section of the act of 1825, in relation to writs of error, is the only place in which the phrase, " beyond sea," has been continued in our statutes, alone and unmodified. But the legislature have defined it so often there can be but little doubt as to its meaning.

*Livermore,* for the plaintiff, contended that but one ground of defence was assigned in the replication, and that the re-plication followed the writ, so as to negative any notice of the suit.

Error lies under the statute for defect of notice, notwith-standing a summons is returned as left at the defendant's last and usual place of abode.

The term, " beyond seas," unless it is expressly defined otherwise in the statute, is held to mean beyond the limits of the state merely. This has been repeatedly decided in the United States courts. 11 *Wheat.* 361, *Shelby* vs. *Guy ;* 3 *Wheat.* 541, *Murray's Lessee* vs. *Baker ;* 7 *Cranch* 525 ; 3 *Ditto* 174.

UPHAM, J. This case comes before us on special demur-rer to the plaintiff's replication.

Galusha *v.* Cobleigh.

The first exception taken is, that it is double, as it alleges several distinct causes of delay in not sooner prosecuting the writ of error. These allegations are that the plaintiff, at the time of the rendition of the original judgment, and until within three years next before the suing out the writ of error, was not a resident of the state of New-Hampshire, but that he was during that time a resident of the state of New-York, and had no notice of the original judgment. These are several distinct facts ; they constitute, however, but one ground of reply to the plea of the statute of limitations. Unless all these allegations had been set forth in the replication, it would have been defective, as furnishing no answer to the plea. The replication is, therefore, not double.

A farther exception taken to the replication is, that it alleges merely that the plaintiff in error had no notice of the judgment, without denying that he had notice of the original writ. But a notice of the writ constitutes notice of the judgment ; and if so, denying of notice of the judgment may well be regarded as a sufficient denial of notice of service of the writ on which the judgment is founded, as the one necessarily includes the other.

It is farther contended, in relation to this point in the replication, that the return of service by the officer, " that he left a summons at the last and usual place of abode of the defendant," is conclusive evidence of a legal notice of service. Such a return is understood to show a summons left at the last and usual place of abode of the party within the state, but is never held conclusive on the question of residence, or of the presence of the party within the state. It would impose a very hazardous duty on the sheriff to compel him to settle the difficult question of the residence of the party, and render him liable for a false return in all cases of mistake. The plaintiff is not estopped by the officer's return from showing his true residence at the time of service.

The rule as to the effect of an officer's return is well laid down by the chief justice, in the case of *Brown* vs. *Davis,*

9 *N. H. Rep.* 76. It is there held, that "the return of
the sheriff of matters material to be returned, is so far conclu-
sive evidence on the parties to the suit, and those claiming
under them as privies, that it cannot be *contradicted* for the
purpose of invalidating the officer's proceedings, or defeating
any right acquired under them."

No attempt is made in this case to contradict or invalidate
the officer's return. The facts set forth by the officer may
all be conceded, and yet, under the circumstances, constitute
no valid foundation for a judgment. The officer returns that
he made a nominal attachment of property, and that he left
a summons at the last and usual place of abode of the de-
fendant. This may all be consistent with the fact that the
defendant, at the time of the commencement of the suit, and
from that time until the rendition of the judgment, was with-
out the state, and had no notice of the suit. If such was the
case, the plaintiff should have governed himself by the re-
quirements of the statute, before proceeding to take execu-
tion.

The statute provides, that "when a suit shall be brought
against a person who is not an inhabitant or resident in this
state, and no personal service be made on the defendant; or
when the person against whom any suit is brought shall be
*absent from the state* at the time of commencing such suit,
and shall not have returned at the time appointed for the
trial, the court shall continue the action to the next term ;
and if at the next term there is no appearance for the defend-
ant, it shall be farther continued, unless the plaintiff shall
produce evidence sufficient to satisfy the court, that the de-
fendant has had notice of the suit a sufficient time before
such term to have appeared at court ; and where judgment
is rendered by default after two continuances, the plaintiff
is required to give bond to respond the amount recovered on
review of the suit, if any shall be had," &c. 1 *Laws N. H.* 92.

The statute of Massachusetts contains the same provision
as our laws ;. and it is there held, that a writ of error lies on

Galusha *v.* Cobleigh.

a judgment of court rendered against the defendant by default, although the officer made return of service by leaving a summons at the last and usual place of abode of the defendant.   1 *Mass.* 341, *Blanchard* vs. *Wild* ; 2 *Mass.* 35, *Skipwith* vs. *Hill.*

In *Jones* vs. *Smith,* 3 *N. H. Rep.* 108, Mr. Chief Justice Richardson remarks, " when the goods or estate of a person who has his domicil in this state, but who may, at the time, be absent from the state, are attached, a summons must be left at his domicil.   In all cases where an attachment is made there must be a service in pursuance of these provisions of the statute.   But it is very apparent that such a service might, in some cases, fail to bring home to the defendant notice of the suit ; and in such cases the action must be continued to the third term of the court, before the rendition of judgment."

The principal objection, however, which has been urged in this case has been, that the plaintiff is barred by the statute of limitations from maintaining his writ of error, because it was not commenced within three years of the rendition of the original judgment.

To avoid this objection, he must show himself within the proviso of the statute authorizing persons " who are infants, *non compos mentis,* femes covert, or beyond sea," to commence an action within a given period after the disability has been removed.

The plaintiff does not allege in terms that he was " beyond sea," but that he was without the state—a resident in New-York, and had no notice of the judgment rendered ; and the question arises, whether these facts show him to have been " beyond sea," within the meaning of the statute.

Our statutes of limitation are for the most part copies of the English statutes, with very slight alterations.   The saving clause in our statute relating to writs of error is precisely the same as the saving clause in the statute of limitations of 21 James I.

Prior to the union of Scotland with England, the saving clause in the English statute was different from that of the statute of James I. The exception in the statute of limitations included at that time all persons resident "without the realm of England," so that their rights were protected until their return. Under this statute, persons in Scotland and Ireland were adjudged to be without the realm of England. After the union of the two kingdoms, the term "beyond seas" was introduced into the statute, instead of "without the realm of England."

In the case, *King* vs. *Walker*, *Black. Rep.* 286, a construction was given to the act, by which Scotland was held not to be beyond seas. The court remark, "the statute ought to be construed. There is now no such kingdom as England. The plaintiff, therefore, while in Scotland was not out of the realm; besides, that is not now the phraseology of the statute. The legislature, by altering it to "beyond sea," at such a critical juncture, seem to have pointed to this very case of living in Scotland. It is a question very doubtful whether the statute of limitations does not now extend to residents in Scotland. As at present advised we should rather think it does, and judgment was rendered accordingly."

A construction was thus early given to the phrase, "beyond sea." As applied to the local position of England, its meaning could hardly be misunderstood. The sea being the natural boundary of the united kingdoms, it was a mere designation of territorial limits. The difficulty has been in adopting that phraseology in this country, where our local situation is entirely different. If we understand the term, however, to be a mere designation of territorial boundary, it has a plain, intelligible meaning, applicable to every country. And the phrase, "beyond sea," in this country, as applicable to our states, has uniformly been regarded, except when otherwise expressly defined in the statute, as a mere designation of the territorial limits of the jurisdiction of the states. 11 *Wheat.* 361, *Shelby* vs. *Guy* ; 3 *Wheat.* 541, *Murray's Les-*

Galusha *v.* Cobleigh.

*see* vs. *Baker ;* 1 *Cond.* 483, *Ford* vs. *Robertdean ;* 14 *Pet.*
141, *Bank of Alexandria* vs. *Dyer.*

We think this is its true construction. The only trouble
in the case has been to determine whether, by our legisla-
tion in New-Hampshire, we have given a different meaning
to the term. The provision as to the limitation of writs of
error has uniformly been embraced within the general stat-
ute relative to the limitation of personal actions, in a section
by itself; and the provision of the law in relation to such
suits has remained the same in the several editions of the
laws of 1805, 1815, and 1830, under one or two revisions of
the act, while the saving clause, as to real actions and actions
of trespass *quare clausum,* and most personal actions, has
constantly varied in its phraseology. In real actions the
saving clause was originally, by statute of June 16, 1791, in
favor of " infants, persons *non compos mentis,* beyond seas,
or without the limits of the United States." *Laws N. H.*
(*Ed. of* 1815,) 164. In the act of June 19, 1805, relative
to real actions, the term, " beyond seas," is omitted. In the
statute of 1791, relative to personal actions, the saving clause
is in favor " of any infant, feme covert, person imprisoned,
or beyond seas, without any of the United States, or *non
compos mentis ;*" while in the act of 1825 the punctuation
is changed, so that the exception reads, " beyond seas, with-
out any of the United States."

The provision as to the limitation of writs of error has
been, that no judgment in any real or personal action shall
be reversed or avoided for any error or defect therein, unless
the writ of error, or suit for the reversing such judgment, be
commenced, or brought and prosecuted with effect, within
three years after such judgment entered of record, saving
unto any infant, feme covert, person *non compos mentis,* per-
son in prison, or beyond sea, the right of bringing any writ
of error or suit for the reversing of any judgment at any time
within three years after such judgment rendered, or within
five years after such impediment shall be removed. *Laws
N. H.* 78, (*Ed. of* 1830.)

The provision as to writs of error has been, through the several revisions of the statute, distinct and different from the provision as to all other actions. The phrase, " beyond sea" merely, is uniformly used in relation to such suits, without any qualification, through a series of acts. Whether this difference was accidental or designed, we think we must affix to it the ordinary meaning which has been so long known and established in law, and that it cannot be explained or avoided by a difference of phraseology as to other actions. If it be desirable that there be an uniform rule in relation to different actions in this respect, it is incumbent on the legislature to establish such rule. As the statute now stands, it is far from being clear that the legislature had any such intention. We, therefore, hold that the replication is good, and that the action may be maintained.